IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Mark Fuller, Individually and on Behalf of others similarly situated, ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 8:04-1193-PMD-BHH |
| vs. ) ) | **REPORT OF MAGISTRATE JUDGE** |
| County of Charleston, a/k/a, Charleston ) County, et al, ) ) | |
| Defendants. ) ) | |

The plaintiff, a former pre-trial detainee, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

**PROCEDURAL BACKGROUND**

The plaintiff brought this action on April 15, 2004. In his fourth amended complaint, filed on July 14, 2004, the plaintiff alleges that on or about March 25, 2004, he was a federal detainee being held in the Charleston County Detention Center ("Detention Center") awaiting federal prosecution when he was assaulted by another inmate and seriously injured. He alleges that his injury was a result of the deliberate indifference of the Charleston County (4th amended comp. ¶¶ 5-7). In addition to the issues arising out of his stay in the detention center, the plaintiff has alleged that certain expungement fee procedures employed by solicitors in all counties in South Carolina are unconstitutional (4th amended comp. ¶¶ 31 - 44).

By order of this court filed August 23, 2004, the expungement issues were bifurcated from the issues pertaining solely to the detention center.

On August 9, 2005, the defendant solicitors filed a motion for summary judgment on the expungement issue. On the same day, the defendants Charleston County and Sheriff Al Cannon also moved for summary judgment. On September 16, 2005, the plaintiff filed responses to both motions.

## APPLICABLE LAW

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not

rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

### *Charleston County Motion*

The plaintiff alleges that he was assaulted by another inmate on March 25, 2004, resulting in him being "seriously injured by having his eye injured and nose broken with the possibility of permanent eye damage" (4th am. comp. ¶ 5). The plaintiff alleges that the assault was unprovoked and a result of the "deliberate indifference" of Charleston County and the "forced deliberate indifference of the defendant sheriff." (4th am. Comp. ¶ 6). Specifically, the plaintiff alleges that the defendants maintained an "inhumane" facility, had insufficient staff on hand to prevent the assault, failed to maintain an adequate classification system, failed to adequately fund the detention center and failed to render timely health care.

Confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication

of guilt. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Id.* (citing *Bell*, 441 U.S. at 53). Absent a showing of expressed intent on the part of the correctional officials, the determination of whether a particular action is punitive turns on whether it was rationally connected to legitimate non-punitive governmental objectives and whether it was excessive in relation to that purpose. *Bell*, 441 U.S. at 537-540; *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). The state must justify conditions of confinement on the basis of ensuring the detainee's presence at trial and effectively managing the detention facility. *Bell*, 441 U.S. at 538. Due process rights are at least coextensive with eighth amendment rights of prisoners, and perhaps greater. *Loe v. Armistead*, 582 F.2d 1291, 1294 (4th Cir. 1978), *cert. denied*, 446 U.S. 928 (1980).

Deliberate indifference to an inmate's safety needs is actionable under Section 1983. *Farmer v. Brennan*, 511 U.S. 825 (1994)(prison officials have duty to protect prisoners from violence "at the hands of other prisoners"). While *Farmer* dealt with an inmate rather than a detainee, the analytical framework and the deliberate indifference standard are the same in both situations. S*ee Brown v. Harris*, 240 F.3d 383, 388-89 (4th Cir. 2001). Accordingly, "for a claim based on a failure to prevent harm, a person must show that he is being detained or incarcerated 'under conditions posing a substantial risk of serious harm." *Id.* at 389, citing *Farmer*, 511 U.S. at 834. Next, the prison official must have a "sufficiently culpable state of mind." *Id.* In adopting an objective standard of "deliberate indifference," the Supreme Court in *Farmer* stated:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. The Supreme Court in *Farmer* equated the deliberate indifference standard with the "subjective recklessness" standard of criminal law. *See id.* at 839-840. As the Fourth

4

Circuit noted in *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997), "[t]rue subjective recklessness requires both knowledge of the general risk, and also that the conduct is inappropriate in light of that risk." 129 F.3d at 340 n. 2.

The plaintiff here alleges that he was assaulted by another inmate. In his complaint, he does not identify any individual law enforcement official who could have or should have anticipated the assault. In her affidavit attached to the defendants' motion for summary judgment, Major Patricia Garrison, a Charleston County officer assigned to the detention center, indicates that the jail records do not indicate that the detention center staff had any prior notice of "ill will" between the plaintiff and the inmate who assaulted him (Garrison aff. at ¶ 5). Accordingly, the plaintiff has not met his burden of showing deliberate indifference to his safety on the part of the defendants.

The plaintiff also complains that the detention center is overcrowded, a point conceded by the defendants. While crowded living conditions which implicate other constitutional deprivations or impose severe restrictions or injurious effects on the prison population may state a constitutional claim[1], the plaintiff here simply states that "the [detention center] at all times exceeded the rated capacity and in fact, has never been operated within its rated capacity and has not been in compliance with the requirements of Title 24 of the South Carolina Code." (4th am. comp. at ¶ 14). The plaintiff does not allege that he was injured by the overcrowding or that the overcrowding resulted in the assault against him. Under these circumstances, the plaintiff's assertion that the detention center is overcrowded does not rise to the level of a constitutional violation.[2]

---

[1] *See, e.g., Rhodes v. Chapman*, 452 U.S. 337 (1981)(overcrowded conditions which subject inmates to vermin infestation and rampant violence and deprive inmates of opportunities for personal hygiene constitute cruel and unusual punishment).

[2] Major Garrison's affidavit indicates that at the time of the incident which is the subject of this action, the unit where the plaintiff was housed had a population of 109 inmates. The rated capacity for the unit was 56 beds, but with double bunking, the capacity would be 111. Major Garrison also notes that the plaintiff had a bed and "the unit was not overcrowded to the extent that it should invoke the United States Constitution." (Garrison aff. at ¶ 4).

The plaintiff also contends that the defendants were "negligent" in "failing to render timely health care". Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment contravening the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).[3] The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Id.* at 102. This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Rogers v. Evans*, 792 F.2d 1052, 1058 (5th Cir. 1986). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

The plaintiff here has failed to put forward any evidence that the defendants were deliberately indifferent to his medical needs. The medical records submitted with Major Garrison's affidavit show that the plaintiff received prompt and appropriate medical care. He was admitted to the medical unit after the incident in question, and was seen by medical professionals and sent for x-rays. He spent several nights in the jail infirmary for treatment and observation. The treatment notes do not indicate that the plaintiff's nose was broken, and there is no indication that he suffered permanent damage. In his brief in response, the plaintiff argues that he still suffers from double vision, more than a year after the assault. However, there is no medical evidence in the record to support this claim. The plaintiff's claims are

---

[3] As discussed above, while pretrial detainees are afforded the protection of the Fourteenth Amendment rather than the Eighth Amendment, the deliberate indifference analysis is the same for both inmates and pretrial detainees. *See Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990).

merely bald allegations which are insufficient to survive summary judgment. *White v. Boyle*, 538 F.2d 1077, 1079 (4th Cir. 1976) (conclusory allegations insufficient to avoid summary judgment).

The plaintiff has named Al Cannon, the Sheriff of Charleston County, as a defendant in this action. With regard to Sheriff Cannon, the plaintiff alleges:

> That the Defendant Sheriff was personally and subjectively aware of the conditions of the Charleston County Jail and reported verbally and in writing to the Defendant County Government giving the Defendant County Government actual Notice of the conditions which led directly to the Plaintiffs injuries and in receiving those complaints and information the County Government was deliberately indifferent.

(4th am. comp. at ¶ 19).

As the defendants note, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978). A supervisor may be held liable for the constitutional violations committed by his subordinates, but only if the plaintiff can show that the supervisor tacitly authorized, or was deliberately indifferent to, the subordinates' actions. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). Supervisory liability for constitutional injuries is not imposed on a *respondeat superior* basis absent an official policy or custom which results in illegal action. *Fisher v. Washington Metro Area Transit Authority*, 690 F.2d 1133, 1142-43 (4th Cir. 1982). While the plaintiff has made an allegation as to personal knowledge and involvement by Sheriff Cannon, there is no evidence to support his allegations. Accordingly, as to Sheriff Cannon, it is recommended that summary judgment be granted on this additional ground.

***Solicitors' Motion***

In the same complaint where he alleges that he has suffered an unconstitutional injury in the Charleston County Detention Center, the plaintiff also brings an action against all the Solicitors in South Carolina, alleging that he and other similarly situated citizens should not have to pay $150.00 in order to obtain an expungement of criminal records.  The plaintiff claims that the fee for expungement system denies the plaintiff and other similarly situated persons due process and equal protection of the law as guaranteed by the Fourteenth Amendment of the Constitution.

At the outset, this court notes that the plaintiff has not demonstrated standing to assert this claim.  He does not allege that he has been denied an expungement, merely that he "does not have the fee to expunge his Larceny arrest."  (4th am. comp, at ¶ 37).  Article III, Section 2 of the United States Constitution limits the judicial power of federal courts to the adjudication of "cases" or "controversies".  *See Fowler v. Alexander*, 478 F.2d 694, 696 (4th Cir. 1973) (person seeking relief must have a sufficient personal stake in the outcome of the litigation).  This clause provides assurance that courts will be called on only to resolve real issues between genuine adversaries rather than to give advisory opinions about theoretical questions.  *Id., citing Abele v. Markle*, 452 F.2d 1121, 1124 (2nd Cir. 1971).

Because the plaintiff here has failed to present a "case" or controversy" with regard to the expungement issue, summary judgment should be granted to the defendant solicitors.  However, in the event the district court does not adopt this recommendation, the court will briefly address the other arguments of the parties.

The solicitors in this state first began collecting expungement fees pursuant to an order of Chief Justice Jean Toal[4].  As explained in the affidavits of the individual solicitors attached to the memorandum in support of summary judgment, citizens are not required to go through the offices of the solicitors to obtain expungements.  Prior to Chief Justice Toal's,

---

[4] *See In re: Expungement of Criminal Records,* Admin. Order, Chief Justice Toal, South Carolina Supreme Court, July 11, 2003.

many of the solicitors assumed that they did not have to assist with the process if they did not choose to do so. Chief Justice Toal's order, however, mandated assistance with the expungement process from the solicitors' offices. The order also directed that, in exchange for assistance from the solicitors' offices in the expungement process, applicants would be responsible for an administrative fee in the amount of $150.00 "to defray the costs associated with this process". Thereafter, the solicitors began charging the $150.00 fee from any citizens who chose to use their offices to complete the expungement application process. However, as the Toal order makes clear, citizens may still complete the paperwork on their own or hire an attorney to do it for them. *See, e.g., State v. Brown* (order dated July 21, 2004). Further, some of the solicitors have indicated in their affidavits that, in some instances if an individual cannot afford to pay the expungement fee, the respective solicitor's office would simply waive the fee.

The plaintiff alleges that the expungement fee violates the Equal Protection Clause by unconstitutionally discriminating against individuals who are unable to pay the fee. However, there is no constitutional right to expungement of criminal records. *See Bird v. Summitt County, Ohio*, 730 F.2d 442, 444 (6th Cir. 1984)(a state is not constitutionally required to expunge an arrest record). Moreover, the plaintiff has not stated a valid equal protection claim. To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. A state regulation or policy is presumed to be valid if the classification is rationally related to a legitimate state purpose. However, when the state classifies by race, alienage, or national origin, the classification is subject to stricter scrutiny and will be sustained only if it is narrowly tailored to serve a compelling state interest. *See e.g., City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985).

Here, the plaintiff has not shown that he is a member of any constitutionally protected class. Accordingly, the only question is whether the expungement fee system is

rationally related to a legitimate state purpose. Chief Justice Toal's order indicates that the fee is meant to offset the administrative costs of assisting citizens with the expungement process, a legitimate state purpose. Accordingly, the equal protection clause has not been violated.

Finally, the solicitors in this action are also entitled to quasi-judicial immunity for their actions mandated by Chief Justice Toal's order. *See Briscoe v. LaHue*, 460 U.S. 325, 335 (1983); *see also Belk v. Charlotte-Mecklenburg Bd. Of Education*, 269 F.3d 305, 337 (4th Cir. 2001)(school officials acting pursuant to a desegregation court order were immune from liability for actions taken consistent with that order).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based on the foregoing, it is recommended that the motion for summary judgment by defendants Charleston County and Sheriff Al Cannon be granted. It is further recommended that the motion for summary judgment of the individual solicitors be granted.

IT IS SO RECOMMENDED.

s/ Bruce Howe Hendricks
United States Magistrate

January 17, 2006
Greenville, South Carolina